UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NATALIE ANDERSON,<br>        *Plaintiff*,<br>        *v.*<br>METRO-NORTH    COMMUTER    RAILROAD<br>COMPANY,<br>        *Defendant.* | Civil No. 3:14cv452 (JBA)<br><br>May 11, 2016 |

**RULING ON DEFENDANT'S MOTION IN LIMINE
REGARDING TESTIMONY OF DR. SELDEN**

Defendant Metro-North Commuter Railroad Company ("Metro-North") moves [Doc. # 22] in limine to preclude Plaintiff Natalie Anderson from offering the testimony of Dr. Steven Selden, an expert retained by Defendant for the purpose of conducting an independent medical examination ("IME") of Plaintiff. Plaintiff opposes Defendant's motion. For the following reasons, Defendant's motion in limine is denied.

I.      **Background**

This case was filed on April 7, 2014. On January 7, 2016, Plaintiff disclosed Dr. David Bomback, an orthopedic surgeon, as a treating expert expected to testify at trial. (*See* Ex. 2 to Mot. in Limine re Selden.) Defendant then arranged for Dr. Steven Selden, also an orthopedic surgeon, to conduct an IME of Ms. Anderson on February 4, 2016. (Mot. in Limine re Selden at 2.) Thereafter, on February 10, 2016, Metro-North disclosed Dr. Selden as an expert witness and served his report pursuant to Fed. R. Civ. P. 26(b)(4)(A). (*Id.*) On March 12, 2016, Plaintiff also disclosed Dr. Selden as her own expert. (*See* Ex. 1 to Mot. in Limine re Selden.) In the parties' April 18, 2016 Joint Trial Memorandum, however, only Plaintiff listed Dr. Selden as a witness.

## II.    Discussion

Defendant's motion in limine and subsequent briefing raises three issues with respect to Dr. Selden: (1) preliminarily, the standard to be applied in determining whether a plaintiff may offer the testimony of an expert initially designated as a testifying expert by the defendant but whose designation was withdrawn prior to trial but after the disclosure of the expert's report; (2) whether, applying that standard, Plaintiff should be permitted to call Dr. Selden at trial; and (3) whether, irrespective of the Court's ruling as to Dr. Selden's testimony, Dr. Selden's report is admissible. The Court addresses these issues in turn.

### A.  Standard to be Applied

As Defendant notes, courts around the country are divided on the answer to the question of what standard to apply in determining the admissibility of testimony by an opposing party's designated expert whom the opposing party decides, before trial, not to call at trial. Three general trends have emerged.

A minority of courts have held that a party subjected to examination by an expert under Federal Rule of Civil Procedure 35[1] has a right to call that expert as a witness, regardless of whether the party that designated the expert intends to do so. *See, e.g., Crowe v. Nivivson*, 145 F.R.D. 657, 658 (D. Md. 1993). The *Crowe* court reasoned that "Rule 35 balances the privacy interests of the party examined with the interest of the party seeking

---

[1] Under Rule 35(a), "[t]he court where the action is pending may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Rule 35(b) adds, however, that "[t]he party who moved for the examination must, on request, deliver to the requester a copy of the examiner's report, together with like reports of all earlier examinations of the same condition."

examination, the judicial system, and society as a whole in arriving at the truth of the matter at issue. In return for suffering an invasion of his person, the examined party is entitled to make use of such information as results from the examination." *Id.* Few courts have, however, followed the *Crowe* court's lead in creating a per se rule with respect to expert examiners' testimony, and indeed, neither party here asks the Court to adopt the *Crowe* rule.

A second trend, which Defendant urges the Court to follow, is that Federal Rule of Civil Procedure 26(b)(4)(D) governs this issue. *See, e.g., Durflinger v. Artiles*, 727 F.2d 888, 891 (10th Cir. 1984) (applying Rule 26(b)(4)(D) to determine if one party could call an expert witness designated by the other party, whose designation that party subsequently withdrew); *R.C. Olmstead, Inc. v. CU Interface, LLC*, 657 F. Supp. 2d 899, 904 (N.D. Ohio 2009) (applying Rule 26(b)(4)(D) to determine if one party could depose an expert witness designated by the other party, whose designation that party subsequently withdrew); *Carroll v. Praxair, Inc.*, No. 05-0307, 2007 WL 437697, at *2 (W.D. La. Feb. 7, 2007) (same); *Netjumper Software, LLC v. Google, Inc.*, No. 04-70366CV, 2005 WL 3046271, at *3 (S.D.N.Y. Nov. 10, 2005) (same); *Lehan v. Ambassador Programs, Inc.*, 190 F.R.D. 670, 672 (E.D. Wash. 2000) (applying Rule 26(b)(4)(D) to determine if one party could call an expert witness designated by the other party, whose designation that party subsequently withdrew). Under that Rule,

> [o]rdinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:
>
> (i) as provided in Rule 35(b); or

(ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

Fed. R. Civ. P. 26(b)(4)(D).

The courts that have adopted the position that Rule 26(b)(4)(D) is controlling have explained that "Rule 26(b)(4) controls trial preparation matters involving experts." *Carroll*, 2007 WL 437697, at *2. "The purpose of Rule 26(b)(4)(A)[2] is to ensure that parties can properly prepare for cross-examination of expert witnesses at trial," while Rule 26(b)(4)(D) "is intended to prevent the unfairness of allowing one party to benefit from the opposing party's trial preparation." *R.C. Olmstead, Inc.,* 657 F. Supp. 2d at 904. "[W]here an expert is non-testifying, there is no need to prepare for cross-examination of that expert." *Id.*; *see also Carroll*, 2007 WL 437697, at *2; *Netjumper Software, LLC,* 2005 WL 3046271, at *9.

The logic of these cases, is not however, applicable here. Unlike in many of the cited cases, the expert at issue here, Dr. Selden, has already produced a report to Plaintiff, as he was required to do under Rule 35. Rule 26(b)(4)'s concern about the "unfairness of allowing one party to benefit from the opposing party's trial preparation," is therefore, inapposite. Nor are many of the other four purposes of Rule 26(b)(4)(D), noted by Magistrate Judge Margolis in *Long Term Capital Holdings v. United States*,[3] served by applying the rule here.

---

[2] Federal Rule of Civil Procedure 26(b)(4)(A) provides in relevant part: "A party may depose any person who has been identified as an expert whose opinions may be presented at trial."

[3] "There are four commonly articulated policy considerations" underlying Rule 26(b)(4)(D):

(1) the interest in allowing counsel to obtain the expert advice they need in order properly to evaluate and present their clients' positions without fear

4

The first consideration observed by Magistrate Judge Margolis—the interest in allowing counsel to obtain expert advice without fear of potentially benefitting their adversary—is simply not implicated where, as here, an expert is retained not for the purpose of consultation but for the purpose of conducting an examination of the plaintiff, and where the expert's report has already been written and served on the plaintiff. *See Agron v. Trustees of Columbia Univ. in City of New York*, 176 F.R.D. 445, 449 (S.D.N.Y. 1997). Indeed, many courts have held that "[a] witness identified as a testimonial expert is available to either side; such a person can't be transformed after the report has been disclosed . . . to the status of a trial-preparation expert whose identity and views may be concealed." *S.E.C. v. Koenig*, 557 F.3d 736, 744 (7th Cir. 2009); *see Vidal v. Metro-N. Commuter Ry. Co.*, No. 3:12CV0248 (MPS) (WIG), 2014 WL 413952, at *3 (D. Conn. Feb. 4, 2014) ("Defendant has already produced his report, which generally waives the protections afforded a non-testifying expert by Rule 26(b)(4)(D)."); *Brigham Young Univ. v. Pfizer, Inc.*, No. 2:12-MC-143 (TS) (BCW), 2012 WL 1029304, at *5 (D. Utah Mar. 26, 2012) ("Plaintiffs' designation of DNA Solutions as a testifying expert—when that

---

that every consultation with an expert may yield grist for the adversary's mill; (2) the view that each side should prepare its own case at its own expense; (3) the concern that it would be unfair to the expert to compel its testimony and also the concern that experts might become unwilling to serve as consultants if they suspected their testimony would be compelled; and (4) the risk of prejudice to the party who retained the expert as a result of the mere fact of retention.

No. 3:01CV1290 (JBA) (JGM), 2003 U.S. Dist. LEXIS 14579, at *9–10 (D. Conn. May 6, 2003) (internal quotation marks omitted); *see Rubel v. Eli Lilly & Co.*, 160 F.R.D. 458, 460 (S.D.N.Y. 1995) (same).

designation was withdrawn at such a late time in the case and after expert reports were issued—removes the question of whether that expert should be able to be deposed and used at trial from the exceptional circumstances requirement found in Rule 26(b)(4)([D])."); *United States v. Cinergy Corp.*, No. 1:99cv1693 (LJM) (JMS), 2009 WL 1124969, at *2 (S.D. Ind. Apr. 24, 2009) ("[C]ourts have concluded that the designation of an expert as one to testify at trial takes that expert out of the purview of FRCP 26(b)(4)([D]), which requires that the opposing party must show exceptional circumstances to depose that non-testifying expert."); *Kerns v. Pro-Foam of S. Alabama, Inc.*, 572 F. Supp. 2d 1303, 1311 (S.D. Ala. 2007) ("[O]nce a party has given testimony through deposition or expert reports, those opinions do not 'belong' to one party or another, but rather are available for all parties to use at trial."); *Penn Nat. Ins. v. HNI Corp.*, 245 F.R.D. 190, 193 (M.D. Pa. 2007) ("By designating Mr. Kufta, Mr. Bethel, and Mr. Popolizio as experts pursuant to Rule 26(b)(2) and allowing discovery of their expert reports without objection, Penn National and Travelers waived the protection of Rule 26(b)(4)([D]) and subjected these experts' opinions to the scrutiny of trial."); *Agron*, 176 F.R.D. at 449 ("Plaintiff, by submitting the Deutsch Report to Defendant in discovery, voluntarily waived the only relief that Rule 26(b)(4)([D]) provides — the non-disclosure of expert discovery for a non-testifying expert."); *House v. Combined Ins. Co. of Am.*, 168 F.R.D. 236, 245 (N.D. Iowa 1996) ("[O]nce an expert is designated, the expert is recognized as presenting part of the common body of discoverable, and generally admissible, information and testimony available to all parties."); *see also* 6 *Moore's Federal Practice Civil* § 26.80 ("Once a party has designated an expert witness as someone who will testify at trial, the later withdrawal of that designation may neither prevent the deposition of that witness by the opposing party nor the expert's testimony at trial.").

The second and third considerations—the view that each side should prepare its own case and that it would be unfair to compel the expert's testimony—are equally inapposite where, as here, the expert has already prepared and provided the opposing party with its report. *See Brigham Young Univ.*, 2012 WL 1029304, at *4 ("Rule 26(b)(4)(D) acts as a shield permitting parties to prepare for trial by consulting with whomever they choose without fear of the opposing party discovering that preparation. It has similar interests to those found in the work product doctrine, which also protects matters prepared in anticipation of litigation. But, Plaintiff's suggested use of the Rule in this case could turn the Rule into a sword—allowing a party to designate an expert as testifying and then after obtaining an unfavorable opinion, simply reclassifying that expert as non-testifying to the detriment of the opposing side to avoid any negative consequences."); *Meharg v. I-Flow Corp.*, No. 1:08-CV-00184 (DFH) (TA), 2009 WL 1867696, at *2 (S.D. Ind. June 26, 2009) ("[T]he concerns that counsel may fear that all expert advice obtained may be discoverable and that experts may be discouraged from serving if their testimony could be compelled are not relevant in this situation, where Dr. Pence's report has already been disclosed and Plaintiffs had at one time listed Dr. Pence as a witness.").

The fourth concern—the risk of prejudice to the party who retained the expert stemming from the factfinder's knowledge that the party is not calling its own expert—is, however, hardly insubstantial, since an inference drawn by the jury that the defendant was "hiding" this witness would impugn the defendant's counsel's credibility. Nonetheless, as Magistrate Judge Martinez has noted, this risk of prejudice can be alleviated by orders to the plaintiff and the expert that the expert's original retention and designation by the defendant shall not be mentioned. *See Borges v. Seabulk Int'l, Inc.*, No. 3:04cv324 (DFM),

2010 WL 1571186, at *1 (D. Conn. Apr. 12, 2010). For all of these reasons, the Court rejects Defendant's invitation to apply Rule 26(b)(4)(D) here.

Instead, the Court adopts the Rule 403 balancing approach advocated by Plaintiff and adopted by a number of courts both within this Circuit, *see Agron*, 176 F.R.D. at 449–50, and without, s*ee, e.g., Brigham Young Univ.*, 2012 WL 1029304, at *4; *Meharg*, 2009 WL 1867696, at *1; *Cinergy*, 2009 WL 1124969, at *2; *Ferguson v. Michael Foods, Inc.*, 189 F.R.D. 408, 409 (D. Minn. 1999); *House*, 168 F.R.D. at 245.

### B.  Application of the Standard

Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Defendant contends that the Court should exclude Dr. Selden's testimony even under this test because the probative value of Dr. Selden's testimony is substantially outweighed by the risk of unfair prejudice to Metro-North if the jury deduced that Dr. Selden was originally retained by Defendant, and because Dr. Selden's testimony is needlessly cumulative and not substantially different from Dr. Bomback's testimony. (Mot. in Limine re Selden at 16–17.) Plaintiff, for her part, urges the Court to "deny defendant's Motion in Limine because [1] it is not possible for the Court to determine in advance of the trial that Dr. Selden's testimony at trial, assuming that he is called by plaintiff, will be cumulative of Dr. Bomback's <u>admitted trial testimony</u>" (Pl.'s Opp'n [Doc. # 30] at 6), and (2) "there are material differences" between Dr. Selden and Dr. Bomback's expected testimony (Pl.'s Suppl. Opp'n [Doc. # 36] at 1).

8

The Court is not persuaded by Plaintiff's first argument. As discussed during oral argument on Defendant's motion on May 3, 2016, neither Dr. Selden nor Dr. Bomback were deposed by either party, and consequently, their testimony will be limited to the content of their reports, which is already known. In light of this, the Court need not wait until trial to rule on Defendant's motion.

The Court does, however, find merit in Plaintiff's second argument. Having reviewed both Dr. Selden's and Dr. Bomback's reports, the Court finds that there is some probative value to Dr. Selden's report, and this value is not substantially outweighed by the risk of prejudice.

Although the majority of Dr. Selden's report merely summarizes and quotes from other doctors' medical records, that portion of the report in which Dr. Selden describes his examination of Ms. Anderson and his impression and recommendations is relevant and useful. Dr. Selden notes:

> Examination of her back showed that when asked to point where she had pain she pointed to the lower lumbar area and right sacroiliac region. She had good range of motion of her back but complained of pain with flexion. She had some discomfort on palpation of the right SI joint. . . . I have reviewed the patient's MRI scans of the lumbar spine from 7/20/13 and 4/28/14. To my review, these MRI scans show a disc bulge at L5-S1 without any nerve impingement. . . . Ms. Anderson has evidence of a lumbar strain and a sacroiliac strain as a result of the train derailment accident discussed above. There is no evidence of any preexisting condition. Her overall treatment has been appropriate. Based on the medical records and her examination it is my opinion that the proposed second sacroiliac joint injection by Dr. Bomback is reasonable. I would defer an opinion on the need for any surgery at this time. Dr. Bomback has advised consideration for a sacroiliac fusion. I would defer making any opinion as to the need for such procedure until information is available as to how the patient responds to this second sacroiliac injection.

Dr. Bomback, by contrast, reported that Ms. Anderson "has been having right lower back pain that radiates down to the right buttocks especially with extended sitting and standing"; that the "MRI lumbar spine done April 2014 . . . reveals a central disc protrusion at L5-S1 without significant nerve root impingement"; and that Ms. Anderson's "symptoms and exam findings are classic for right sacroiliac joint dysfunction." Following the second sacroiliac joint injunction, referenced by Dr. Selden, Dr. Bomback noted "Natalie has done beautifully from this second right SI injection. She has now done well with 2 SI injections giving 90–100% relief. Clearly, I feel we now have confirmed her diagnosis of right sacroiliac joint dysfunction and given her failure of extensive conservative treatment and the results from the diagnostic injections, I have now recommended a minimally invasive right SI joint fusion."

As the foregoing makes clear, while Dr. Selden's testimony would not add a great deal to Dr. Bomback's testimony, it is probative insofar as it identifies an injury not specifically identified by Dr. Bomback (a lumbar strain) and is corroborative of Dr. Bomback's findings. Moreover, although the Court recognizes some potential risk that jurors might infer, to Defendant's detriment, that Dr. Selden was originally Plaintiff's witness because he is not Plaintiff's treating physician, the Court does not find this to be a particularly strong possibility where, as here, the parties and witnesses will be instructed not to reference his entry into this case. Indeed, if Plaintiff calls Dr. Selden, it seems more likely that jurors will assume he was retained by Plaintiff; there will be nothing on the record to indicate otherwise. Accordingly, the Court finds that the probative value of Dr. Selden's testimony, however modest, is not substantially outweighed by the risk of

prejudice to Defendant. For that reason, Plaintiff will not be precluded from offering the testimony of Dr. Selden.

### C.  Admissibility of Dr. Selden's Report

Having found that Dr. Selden's testimony is admissible, the Court turns to the related question of whether Dr. Selden's report is admissible. Plaintiff, relying heavily on Judge Hall's decision in *Pace v. Amtrak*, 291 F. Supp. 2d 93 (D. Conn. 2003), contends that the "report is admissible under the business records exception to the rule against hearsay set forth in Fed. R. Evid. 803(6)." (Pl.'s Opp'n at 7.) Defendant disputes the applicability of this exception. (*See* Def.'s Reply [Doc. # 34] at 5–8.) The Court, however, finds merit in Plaintiff's position.

Under Federal Rule of Evidence 803(6), entitled "Records of a Regularly Conducted Activity," a record of an opinion or diagnosis is not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling . . . ;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness or by a certification that complies with Rule 902(11) or (12) . . . ; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). "'[T]he principal precondition to admission of documents as business records pursuant to Fed. R. Evid. 803(6) is that the records have sufficient indicia of trustworthiness to be considered reliable.'" *Elsevier B.V. v. UnitedHealth Grp., Inc.*, 784 F.

Supp. 2d 286, 292 (S.D.N.Y. 2011) (quoting *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.,* 38 F.3d 627, 632–33 (2d Cir. 1994)). That "determination is left to the sound discretion of the trial court," *id.,* but as a general matter, "'Rule 803(6) favors the admission of evidence rather than its exclusion if it has any probative value at all,'" *405 Condo Assocs. LLC v. Greenwich Ins. Co.*, No. 11 CIV. 9662 (SAS), 2012 WL 6700225, at *4 (S.D.N.Y. Dec. 26, 2012) (quoting *United States v. Williams*, 205 F.3d 23, 24 (2d Cir. 2000)).

Defendant contends that "[t]he business records exception is inapplicable in this case" because "[t]he IME report is not a medical record made for purposes of medical treatment," but rather is a record "created for the express purpose . . . of litigation." (Def.'s Reply at 5–6.) Defendant is undoubtedly correct that "[m]aterial prepared for litigation . . . is typically inadmissible, either as not having been prepared in the course of a regularly conducted activity or as having indications of lack of trustworthiness." Weinstein's Federal Evidence § 803.08 (2016); *see also Palmer v. Hoffman*, 318 U.S. 109, 114 (1943) (excluding accident reports prepared by railroad in preparation for litigation on the grounds that the reports were calculated for use in court not in business).

However, where, as here, the report at issue is offered by the opposing party, not the party whose doctor made the report, courts in this Circuit have admitted the report under 803(6), over objections such as those raised here, based on the regularity and trustworthiness prongs of the rule. *See, e.g., White v. Zutell*, 263 F.2d 613, 614–15 (2d Cir. 1959); *Pekelis v. Transcontinental & W. Air, Inc.*, 187 F.2d 122, 130 (2d Cir. 1951); *Korte v.*

*New York, N.H. & H.R. Co.*, 191 F.2d 86, 90 (2d Cir. 1951); *Pace*, 291 F. Supp. 2d at 102[4];
*Yates v. Blair Transport., Inc.*, 249 F. Supp. 681, 690 (S.D.N.Y. 1965).

With respect to trustworthiness, the Second Circuit explained in *Pekelis* that the
usual bar on admitting reports prepared for litigation was "aim[ed] at the evils of
introducing evidence built up to promote the self-interest of the entrant." 187 F.2d at 130;
*see also United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010) ("The purpose of the rule
is to ensure that documents were not created for personal purposes or in anticipation of
any litigation so that the creator of the document had no motive to falsify the record in
question." (internal quotation marks and alterations omitted)). This rationale, however,
had no applicability where the reports sought to be admitted "were against the interest of
the entrant when made" and were thus "clearly not part of a story cooked up in advance of
litigation in the disguise of business records." *Pekelis*, 187 F.2d at 130. Moreover, the court
reasoned, "it [wa]s not the entrant . . . who sought to introduce the reports, but the plaintiff,
and this too [t]ends to show that they were not contrived by the entrant for litigation." *Id.*;
*see also Yates*, 249 F. Supp. at 690 ("[T]he fact that litigation involving Liberty mutual was

---

[4] Defendant attempts to distinguish *Pace* on the grounds that in *Pace*, the report at
issue "'was initially listed as an exhibit by both parties in the Joint Trial Memorandum, and
then defendant did not withdraw the exhibit and object to it until the pretrial conference,'"
and additionally the report "was admitted only after the defendant, Amtrak, 'informed the
court that [after the plaintiff rested his case], contrary to its previous plans, it no longer
intended to call [the doctor] as a witness.'" (Def.'s Reply at 7 (quoting *Pace*, 291 F. Supp. 2d
at 102–03).) Those circumstances, however, were relevant in *Pace* only to the defendant's
argument that "the plaintiff failed to lay the required foundation for admission of [the
doctor's] report as a business record." *Pace*, 291 F. Supp. 2d at 102. Because, as discussed
below, the Court need not take up that issue yet here, the distinctions Defendant notes are
immaterial to the Court's analysis.

pending when these reports were made, if anything, enhances the trustworthiness of the documents, since it is the plaintiff, not the defendant, who seeks their introduction (i.e., the party whose interest is adverse to that of the party on whose behalf the reports were made)."). Here too, the fact that the report Plaintiff seeks to admit was prepared by a doctor of Defendant's choosing at Defendant's behest, is some evidence of its trustworthiness.

Further, the fact that Dr. Selden prepared the report in anticipation of litigation does not inexorably lead to the conclusion that the report was not a regularly made record kept in the course of a regularly conducted activity. Indeed, the Second Circuit and district courts within this Circuit have held otherwise. In *White*, for example, the Second Circuit, in discussing the admissibility of "a report of a doctor who examined the plaintiff at the request of defendants' insurer," found that "[t]he making of this report was clearly a part of this specialists' 'business'; indeed that is what he was commissioned to do." 263 F.2d at 615. Judge Hall held likewise in *Pace*, finding that because a doctor wrote "IME reports as part of his overall medical practice," his report "falls squarely within the business records exception." 291 F. Supp. 2d at 103.

For all of these reasons, if Plaintiff can show the Court, through the testimony of the custodian or another qualified witness (given outside the presence of the jury) or through a certification that complies with Rules 902(11) or (12), that Dr. Selden prepared his IME report at or near the time of his examination of Ms. Anderson, that he regularly prepares IME reports as part of his regular medical practice, and that Defendant solicited

14

his IME report of Ms. Anderson, Dr. Selden's report will be admissible as a business record.[5]

### III.    Conclusion

Accordingly, Defendant's Motion in Limine [Doc. # 22] regarding the Testimony of Dr. Selden is DENIED.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 11th day of May, 2016.

---

[5] Defendant objects that "there has been no certification" offered in this case. (Def.'s Reply at 6.) However, as Plaintiff has not yet put the report into evidence, no certification is necessary yet.